**LEMERT ENGINEERING COMPANY, INC., Appellant (Defendant Below),**

v.

**MONROE AUTO EQUIPMENT COMPANY, INC., Appellee (Plaintiff Below).**

No. 3–582A105.

Court of Appeals of Indiana,
Third District.

Jan. 25, 1983.

Peter L. Rockaway, Plymouth, for appellant.

David B. Weisman, South Bend, for appellee.

STATON, Judge.

Monroe Auto Equipment, Inc. (Monroe) sued Lemert Engineering Company, Inc. (Lemert) seeking treble damages and attorney's fees after a check issued by Lemert to Monroe, in the amount of $7,506.00, was twice dishonored by the drawee bank. The trial court granted Monroe's motion for summary judgment and entered judgment against Lemert in the amount of $24,018.00. On appeal, Lemert contends that because the check was postdated, it cannot provide a basis for a treble damage award.

Reversed and remanded.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Richardson v. Citizens Gas & Coke Utility* (1981), Ind. App. 422 N.E.2d 704. The pleadings, interrogatories, admissions, and affidavits in this case reveal that Lemert issued a check to Monroe in satisfaction of a judgment. The check was mailed to Monroe on or about April 13, 1981, but it was dated April 28, 1981. Monroe presented the check for payment on or after April 28, 1981, and the check was dishonored due to insufficient funds.

Monroe then brought this action pursuant to IC 1976, 34–4–30–1 (Burns Code Ed., 1982 Supp.), which reads:

> "Damages for property loss caused by criminal act.—If a person suffers a pecuniary loss as a result of a violation of IC 35–43 [35–43–1–1—35–43–5–5] he may bring a civil action against the person who caused the loss for:
>
> "(1) An amount equal to three [3] times his actual damages;
>
> "(2) The costs of the action; and
>
> "(3) A reasonable attorney's fee."

In granting Monroe's motion for summary judgment, the trial judge concluded that,

> "puruant [sic] to Indiana Code, § 34–4–30–1 and the case of *American Leasing, Inc. vs. Maple* (Ind.App.,1980) 406 N.E.2d 333, the plaintiff is entitled to summary judgment for treble damages in the total amount of $22,518.00. The plaintiff further is entitled to recovery of attorney fees and the Court finds that a reasonable attorney fee herein is $1,500.00.

Unfortunately, this conclusion of law does not contain a theory which supports the judgment against Lemert. IC 34–4–30–1 provides a civil remedy for violations of sections within Article 43 of Title 35. However, the trial judge made no conclusion that Lemert violated one of those sections.[1]

■ In reviewing a summary judgment, this Court ordinarily will confine its review to the propriety of the legal theory relied on by the trial court. *Fort Wayne, Etc. v. City of Fort Wayne* (1980), Ind.App., 408

---

1. The availability of an action for treble damages upon the dishonor of a postdated check was not at issue in *Americar.*

N.E.2d 1295. This limited scope of review relieves the parties, as well as this Court, from the task of sifting through legal theories which might be applicable to the facts of a case. However, where the parties have addressed a theory on appeal, this rationale becomes less compelling and this Court will review a theory addressed by the parties. *Id.* Therefore, we will address the theories which Monroe argues provide a basis for the judgment of the trial court.

█ Monroe contends that Lemert violated IC 1976, 35–43–5–3(a)(7) (Burns Code Ed., 1979 Repl.), which provides:

> "Deception.—(a) A person who: ...
>
> "(7) With intent to defraud, misrepresents the identity of himself or another person or the identity or quality of property; ...
>
> commits deception, a class A misdemeanor."

**2.** "35–41–1–2. Definitions.—As used in this title: ...
'Property' means anything of value; and includes a gain or advantage or anything that might reasonably be regarded as such by the beneficiary; real property, personal property, money, labor, and services; intangibles; commercial instruments; written instruments concerning labor, services, or property; written instruments otherwise of value to the owner, such as a public record, deed, will, credit card, or letter of credit; a signature to a written instrument; extension of credit; trade secrets; contract rights, choses-in-action, and other interests in or claims to wealth; electricity, gas, oil, and water; captured or domestic animals, birds, and fish; food and drink; and human remains."
(Burns Code Ed., 1982 Supp.).

**3.** "35–43–5–5. Check deception.—(a) A person who knowingly or intentionally issues or delivers a check, draft, or order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a class A misdemeanor.
"(b) An unpaid and dishonored check, draft, or order that has the drawee's refusal to pay and reason therefor printed, stamped, or written on or attached to it constitutes prima facie evidence.
"(1) That due presentment of it was made to the drawee for payment and dishonor thereof; and

Monroe argues that the check falls within the definition of "property",[2] and Lemert misrepresented its quality. However, this statute requires a showing that Lemert acted with "intent to defraud". The pleadings, interrogatories, and admissions upon which the summary judgment was based do not support the proposition that Lemert acted with intent to defraud. Therefore, IC 35–43–5–3(a)(7) does not provide a basis for this judgment.

Monroe also contends that Lemert violated IC 1976, 35–43–5–5 (Burns Code Ed., 1982 Supp.).[3] Lemert contends that this statute does not apply to postdated checks.

IC 35–43–5–5(f)(1) states:

> "(f) A person does not commit a crime under subsection (a) of this section when:
>
> "(1) The payee or holder knows ... that the check, draft, or order is postdated ...."

"(2) That it properly was dishonored for the reason stated.
"(c) The fact that a person issued or delivered a check, draft, or order, payment of which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid or honored. In addition, evidence that a person had insufficient funds in or no account with a drawee credit institution constitutes prima facie evidence that he knew that the check, draft, or order would not be paid or honored.
"(d) The following two [2] items constitute prima facie evidence of the identity of the maker of a check, draft, or order if at the time of its acceptance they are obtained and recorded, either on the check, draft, or order itself or on file, by the payee:
"(1) Name and residence, business, or mailing address of the maker.
"(2) Motor vehicle operator's license number, social security number, home telephone number, or place of employment of the maker.
"(e) It is a defense under subsection (a) if a person who:
"(1) Has an account with a credit institution but does not have sufficient funds in that account; and
"(2) Issues or delivers a check, draft, or order for payment on that credit institution; pays the payee or holder the amount due, together with protest fees and any service fee or charge, not exceeding ten dollars [$10.00], which may be charged by the payee or holder, within ten [10] days after the date of mailing by the payee or holder of notice to

(Burns Code Ed., 1982 Supp.). Neither party has made any allegation concerning whether Monroe knew that the check was postdated. Therefore, we are confronted with the question whether subsection (f) states an element of the offense which must be proved by Monroe or an affirmative defense which must be raised by Lemert.

■ When construing a statute it is the duty of this Court to effectuate the general intent of the legislature. *Economy Oil Corp. v. Indiana Dept. of State Revenue* (1974), 162 Ind.App. 658, 321 N.E.2d 215. In so doing, where the statute is ambiguous, we may consider the consequences of a particular construction. *Id.* Applying these rules to this case, we hold that subsection (f) states an element of the offense of check deception. First, we note that, unlike subsection (f), subsection (e) is specifically denominated as a "defense". Given the contrasting language of the two subsections, we infer that only subsection (e) was intended to state an affirmative defense.

■ Second, ordinarily a payee of a check will be fully capable of ascertaining whether a check is postdated. Therefore, we believe that this subsection was intended to extend the application of the check deception statute to postdated checks when the drawer, through some affirmative conduct, has deprived the payee of the opportunity to determine whether the check is postdated. Thus, in order for a payee to recover from a drawer under this check deception statute, the payee must show that the check was dated on or before the date that it was received; or, if the check is postdated, that the drawer prevented him from ascertaining that fact. Since Monroe has not shown any reason why it could not have known that the check drawn by Lemert was postdated, the summary judgment could not be properly based on IC 35-43-5-5.

Because neither the trial judge nor Monroe has provided this Court with a theory upon which the summary judgment may properly be granted, the grant of summary judgment must be reversed and the case remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

HOFFMAN, P.J., and GARRARD, J., concur.

the person that the check, draft, or order has not been paid by the credit institution. Notice sent to either (i) the address printed or written on the check, draft, or order or (ii) the address given by the person in writing to the payee at the time the check, draft, or order was issued constitutes notice to the person that the check, draft, or order has not been paid by the credit institution. The payee or holder of a check, draft, or order that has been dishonored incurs no civil or criminal liability for sending notice under this subsection.

"(f) A person does not commit a crime under subsection (a) of this section when:
"(1) The payee or holder knows that the person has insufficient funds to insure payment or that the check, draft, or order is postdated; or
"(2) Insufficiency of funds or credit results from an adjustment to the person's account by the credit institution without notice to the person."
(Burns Code Ed., 1982 Supp.).